Stemmons and Yates *vs* Duncan's Heirs. CHANCERY.

ERROR TO THE GARRARD CIRCUIT.

*Mortgages. Motion. Rule. Chancery practice.* Case 74.

JUDGE BRECK delivered the opinion of the Court—which was suspended until the present term, and petition for re-hearing filed and overruled.

*February* 1.

ALFRED HOOKER, to indemnify Benjamin Duncan and M. A. Stemmons as his sureties, executed a mortgage to them, upon a tavern house and lot in the town of Stanford, and subsequently executed two other mortgages upon the same and other property, to other individuals.

Case stated.

. Suits in chancery for a foreclosure having been instituted by the mortgagees under each mortgage, and the same consolidated, the tavern property, under a consent decree, was sold, and Stemmons became the purchaser, and executed bond to the commissioner, with Duncan, his co-mortgagee, &c., as his surety. The report of the commissioner was returned into Court and confirmed. The proceeds of the sale were not sufficient for the indemnity of the elder mortgagees, but no decree was rendered directing their distribution. Duncan having departed this life after the sale, his executor, heirs and widow, were made parties, and upon the motion and affidavit of Benjamin F. Duncan, the executor and one of the heirs, a rule was awarded against Stemmons to show cause why the tavern property should not be conveyed jointly to said Stemmons and the heirs and widow of his co-mortgagee.

The relief sought by the rule was resisted by Stemmons and Yates, who was a junior mortgagee, and had obtained the possession of the property from Hocker, and which he still held, and who had also purchased from Stemmons, after his purchase under the decree, whatever interest he had in the premises.

. The plaintiff in the rule, introduced one Myers as a witness, but as he only proved the declarations of Stem-

The statement of a vendor in regard to his title

STEMMONS, &c.
vs
Duncan's Hr's.

after he has par-
ted with it, are
incompetent a-
gainst his ven-
dee.

—But the vendor
himself was ex-
amined against
his vendee as to
his interest and
what he had sold
on a rule in a
chancery cause.

mons in regard to the circumstances under which he made the purchase, and which were made after his sale to Yates, we are of opinion his testimony was incompetent as to Yates, and that the exceptions to it as to him, were well taken.

Stemmons himself, however, was examined upon oath, and was, we think, a competent witness. He proves the following facts:—That he and Duncan, his co-mortgagee, were joint sureties for Hocker to one Shanks, upon a note for $1,200, which they jointly paid off, and in consequence thereof sought and obtained the decree for a sale of the property in contest—that before the sale he and Duncan had a conversation upon the subject of purchasing in the property for their joint use and benefit, but came to no definite agreement. When he purchased the property, however, he considered he purchased it for himself and Duncan jointly. That when asked after the sale by a son of Duncan whether he and his father were joint in the purchase, he replied he supposed so. That some time afterwards he sold all the interest acquired by his purchase in the property, to Yates, estimating the same as one half, for just as much as he had to pay on his half the debt to Shanks. That Yates was to have the whole property if he, Stemmons, acquired it by his purchase, and if not, whatever he did acquire. That he and Duncan having the oldest mortgage, were entitled jointly to the entire proceeds of the sale. That he had paid nothing on the sale bond, considering the amount thereof as coming to him and Duncan. That when he sold to Yates he explained to him his interest and claim, which was only estimated in their contract at one half. That as between him and Duncan, he was willing for him to have one half, but his feelings were with Yates to obtain the whole, as he had suffered largely by Hocker, and besides that, he, Stemmons, was not upon friendly terms with some of the plaintiffs in the motion. That after his purchase he only paid one half the tavern tax upon the property, informing the collector that Duncan was bound for the other half, and he believed his son and executor had paid it. That there was no writing be-

'tween him and Duncan in regard to the purchase, and that no part of the purchase money had been paid by him, except that he and Duncan were each entitled to one half of the proceeds of sale. That he had purchased the property upon his own responsibility, without Duncan's being bound by his purchase, but that between him and Duncan, he would only contend for one half. That he had sold his interest to Yates for about $800, a sum sufficient to indemnify him for the amount which he had been compelled to pay as surety for Hocker.

It further appears that the property had been sold or struck off to Stemmons at the price of $350, and there is nothing showing that either Stemmons or Duncan were, to any extent, otherwise indemnified as the sureties of Hocker, than by the mortgage upon the property in contest.

Upon this state of fact the Court below directed an undivided moiety of the property to be conveyed to the widow and heirs of Duncan and the other to Stemmons.

<span style="float:right">The decision of the circuit court.</span>

To reverse that decree Yates, in the name of Stemmons, and also in his own name, prosecutes this writ of error.

It is not perceived upon what principle the widow was included among the grantees, to whom a moiety of the property was directed to be conveyed. She may have been a devisee under the will of her husband, which is not in the record. But whether properly included or not, is not material. It was not to the prejudice of either Yates or Stemmons, and they cannot, therefore, although an error, render it available.

But it is contended the decree is otherwise erroneous, not sustained by the testimony or the law.

In regard to the testimony, we have had little difficulty in coming to the conclusion that Stemmons bid in the property for the joint use of himself and Duncan, or in other words, that they were joint purchasers.

They were joint sureties—had each paid an equal portion of the surety debt—they jointly, at the time, held the mortgage title to the property, and which is still held by Duncan's representatives and Stemmons—

the sale, in view of the whole case and of all the cases, may be assumed to have been for their joint benefit and they became jointly liable for the purchase money, if it should even be held otherwise, they were joint complainants, and we think, should be regarded as joint purchasers. The very attitude of the parties, independent of the testimony of Stemmons, seems to authorize this conclusion, and more especially in view of the comparatively small amount for which the property was sold. It is not credible that Duncan would have stood by and seen the property thus sacrificed, except upon the ground that it was to be still jointly liable for the indemnity of both Stemmons and himself. But the testimony of Stemmons not only fortifies but irresistibly forces upon us this conclusion.

He says expressly he considered the purchase as so made; and by his subsequent declarations and acts, requiring Duncan or his representatives to pay one half the town tax, and in his very sale to Yates, he emphatically treated the purchase as a joint one and elected so to consider it. He says he paid nothing upon the sale bond, as he considered the proceeds of the sale belonging to him and Duncan. Duncan's representatives, therefore, held the title in conjunction with Stemmons, and ought not to be deprived of it, but are equitably entitled to have it perfected.

Of this Stemmons himself does not complain and Yates surely, has no cause to complain, as he really purchased but a moiety and will obtain, therefore, all he purchased.

But objection is made to this mode of proceeding.

In view of this question, it will be recollected that no conveyance had been made to Stemmons, that the suits in which the decree for a sale had been made, still remained upon the docket, and the decree open and unexecuted.

It seems to us, under the circumstances, it was clearly in the power of the Court in this way to decide, to whom the conveyance should be made, without compelling the party to resort to a separate independent suit.

A sale of mortgaged property is made at the instance and on the bill of two jointmortgagees; one purchases in the property for their joint benefit—Held that the Chancellor may, at the instance of the other, compel a

Duncan's heirs, Stemmons and Yates were all parties to the suits, in which the sale had been decreed and made. Yates voluntarily appeared as a party to the rule and resisted the relief sought by it. He occupied the attitude of an assignee under Stemmons, had purchased his interest, estimated and defined as a moiety only, and with full notice of the claim of Duncan.

It is the practice in Courts, both of law and equity, even when no suit is pending, upon proper notice, to take cognizance and decide important controversies upon motion and by rule.

In this case the matter in controversy is the right of property, which had been sold by order of the Chancellor, in suits still pending and within his control.

To have directed the property to be conveyed to Stemmons, and then by a decree in an original and independent suit, to have decreed him to convey a moiety of it to Duncan's heirs, would have been an expensive, useless and idle circuity. It seems to us that justice has been done and that neither Stemmons nor Yates has any cause to complain, and the decree is, therefore, affirmed.

*B. Y. Owsley and J. Smith* for plaintiffs; *Turner and J. & W. L. Harlan* for defendants.

STEMMONS, &c.
*vs*
DUNCAN's H's.

joint conveyance to the partners or their alienees, *by its* officers, making the sale.

It is the practice of the Chancellor to carry out his decrees of sales of real estate and place the title in the party entitled thereto, whilst the suit and parties are before him.